**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 12-21984-CIV-KING/MCALILEY**

BEDAT & CO GENEVE,

Plaintiff/Counter-Defendant,

v.

LUXURY MONTRES, LLC,

Defendant/Counter-Plaintiff.
_____________________________________________/

**PLAINTIFF/COUNTER-DEFENDANT BEDAT & CO GENEVE'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS MOTION FOR SANCTIONS INCLUDING DISMISSAL OF COUNTERCLAIM AND AWARD OF ATTORNEYS' FEES**

JORDEN BURT LLP
Richard J. Ovelmen
Jason Kairalla
777 Brickell Avenue, Suite 500
Miami, Florida 33131-2803
Phone: (305) 371-2600
Fax: (305) 372-9928
Email: jpk@jordenusa.com

SULLIVAN & WORCESTER LLP
Andrew T. Solomon
1633 Broadway, 32nd Floor
New York, New York 10019
Phone: (212) 660-3000
Fax: (212) 660-3001
Email: asolomon@sandw.com

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii

SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 2

A. The Videotape Fiasco Was Due To LM's Lack Of Preparation .......... 2

B. LM Caused The Mistrial By Repeatedly Disregarding The Rules Of Evidence And The Court's Instructions .......... 4

1. LM Unsuccessfully Tries To Backdoor Expert Testimony Into The Case Through Lay Witnesses .......... 4

2. LM Repeatedly Refused To Lay A Proper Foundation For Testimony .......... 5

3. LM's Counsel Caused Adverse Rulings By Trying To Obtain Lay Witness Testimony To Interpret Legal Requirements Under The Contract .......... 6

C. LM Misrepresents The Trial Record In Its Brief .......... 7

D. The Requested Sanctions Are Appropriate Under Eleventh Circuit Precedent .......... 8

CONCLUSION .......... 10

CERTIFICATE OF SERVICE .......... 11

**TABLE OF AUTHORITIES**

*Cases*

*Betty K Agencies, Ltd. v. M/V Monada*,
432 F.3d 1333 (11th Cir. 2005) ........ 8, 9

*Calloway v. Perdue Farms, Inc.*,
313 F. App'x 246 (11th Cir. 2009) ........ 9

*Gratton v. Great Am. Commc'ns*,
178 F.3d 1373 (11th Cir. 1999) ........ 9

*Huff v. U.S.*,
273 F.2d 56 (5th Cir. 1959) ........ 6

*Torres v. Cnty. of Oakland*,
758 F.2d 147 (6th Cir. 1985) ........ 6

*Zocaras v. Castro*,
465 F.3d 479 (11th Cir. 2006) ........ 9

*Statutes*

Fed. R. Civ. P. 26 ........ 4, 5

Fed. R. Evid. 602 ........ 5

Fed. R. Evid. 701 ........ 4

Fed. R. Evid. 702 ........ 4

*Other Authorities*

2 Fred Lane, *Goldstein Trial Technique* (2011) ........ 5

7 *Wigmore on Evidence* (Chadbourn rev. 1978) ........ 6

David F. Herr, *Manual for Complex Litigation, Fourth* (2013) ........ 2

Plaintiff/counter-defendant Bedat & Co. Geneve ("Bedat") respectfully submits this Reply in further support of its motion for sanctions (the "Motion") and in opposition to the response memorandum of defendant/counter-plaintiff Luxury Montres ("LM") to the Motion (the "Response")

**SUMMARY OF ARGUMENT**

1. Contrary to LM's contentions, delay aside, the mistrial prejudiced Bedat severely. First, there is the money—LM has no answer for the wasted expense of two trial days and the calendar call, other than quibbling about rates. Second, and more significantly, LM obtained an unjustified "second bite at the apple." LM fired its attorney to ensure that the Court would grant the mistrial and to prevent the trial from restarting the next day with a new jury.

2. LM tries to deflect responsibility for the mistrial on the Court and Bedat. But the record shows that LM was unprepared, unwilling to follow the rules, and unable to proceed once it discharged its counsel.

3. LM does not contest the Court's statutory and inherent authority to issue sanctions. Nor does it seriously protest ordering LM to reimburse Bedat for the cost of two wasted trial days and the calendar call. The real point of contention is dismissal. LM argues that dismissal is too severe under Eleventh Circuit standards. We disagree. LM's default was willful: it discharged its own counsel to get a new trial, on a new date, with a new lawyer, with more time to prepare. There are no "Mulligans" in civil litigation, and Bedat simply cannot be restored to the position where it stood on the day that LM purposefully derailed the trial.

## ARGUMENT

### A. The Videotape Fiasco Was Due To LM's Lack Of Preparation

Bedat's opening memorandum describes LM's self-inflicted wounds due to its poor judgment and technical competence in playing videotaped deposition testimony.[1] This is a key point for two reasons. It explains LM's motive for seeking a second chance in a new trial, and it shows that the trial problems were of LM's own making.

In its Response, LM tries to blames the Court and Bedat. In a footnote, LM cites the Court's "dissatisfaction with technology and its feeling that depositions should not be played by video at all" and its "novel method unique to this Court" for presenting the taped testimony.[2] Resp. at 5 n. 1. As for Bedat, LM takes it to task for raising "objections to testimony requiring repeated sidebar arguments." *Id.* Neither point is correct.

The record shows that LM cannot possibly deflect responsibility.

The starting point is the pretrial conference. At that conference, held on April 5, 2013, the Court directed the parties regarding designating transcripts for trial testimony as follows:

> I want that early so I can read it early. I don't want to sit here and send the jury out while I do that. Get that done by calendar call. I'd do it earlier than that so Mr. Spatzer has a chance to read it, and he can designate the portions that he wants, and then we will look at objections. Why don't you get that done ten, fifteen days before the trial. Something like that. Use your common sense both sides.

Solomon Decl. Ex. A at 46:7-13. This procedure is not "unique," but on all fours with best practices for use of videotaped deposition testimony. *See*, *e.g.,* David F. Herr, *Manual for Complex Litigation, Fourth* § 12.333 (2013).

---

[1] Mot. at 2-3.

[2] LM blames its technical difficulties on the Court by claiming that "[a]t trial, for the first time, the Court announced . . . the page and line of the forthcoming testimony had to be stated for the record." Resp. at 5 n. 1. In reality, reading the page and line was not required by the Court, but rather was suggested by counsel as an alternative to having the court reporter take down every word of the video deposition. Day 1 Tr. 25:10-21.

Based on the Court's pretrial instructions, therefore, the parties had to submit the marked transcripts with objections by May 15, and in no event later than May 20, which was ten days prior to the May 30 calendar call. LM, however, defaulted on both deadlines. In fact, its designations were never submitted in time for pre-trial rulings, virtually assuring trial delays and complications.

The following timeline shows LM's inexcusable dilatory conduct:

- May 7, 2013, the parties agreed to exchange transcript designations, with plaintiff marking its designations in "yellow" and LM using "blue." Solomon Decl. Ex. C.
- May 8, 2013, Bedat provided LM with its designations. Solomon Decl. Ex. D.
- May 15, 2013, Bedat's counsel emailed LM's counsel asking; "Do you have counter-designations of Frank Low that you intend to send me. We need to get this to the Court and I also need time to indicate whether I object to any of your designations." Solomon Decl. Ex. E. LM did not respond.
- May 17, 2013, Bedat re-sent its May 15, 2013 email. LM responded, promising to provide designations and objections by May 20. Solomon Decl. Ex. F.
- May 20, 2013 (the Court's submission deadline), despite its promise, LM failed to provide its designations and objections. Bedat's counsel sent another email demanding compliance. Solomon Decl. Ex. G.
- May 21, 2013, Bedat's counsel sent a formal letter regarding LM's failure to provide deposition designations. Solomon Decl. Ex. H.
- May 23, 2013, LM turned over its own deposition designations, *but designated virtually the entire transcript*. Solomon Decl. Ex. I.
- May 24, 2013, despite being sandbagged with the entire transcript, Bedat's counsel provided LM with line by line objections to various portions of the transcript. Solomon Decl. Ex. K.
- May 29, 2013, LM finally called Bedat to discuss the objections. LM was unyielding, and agreed to withdraw only a few lines of testimony, leaving the balance for the Court's ruling. *See* Solomon Decl. Ex. L.
- May 30, 2013, the parties appeared at the calendar call. At that point, the Court was in no position to rule on LM's egregious over-designations of Mr. Low's video deposition.

As shown, the true cause of LM's struggle was its own dilatory conduct.[3] In any event, had it wanted to, LM could have, as the Court suggested, alleviated the technical problems by having someone read the transcript. But LM refused that suggestion, citing the supposed importance of Mr. Low's demeanor.[4] This, however, is a contract case where the parties' relationship and interactions are heavily documented. LM, itself, describes the case as "a straight forward breach of contract case." Resp. p. 10. Demeanor was hardly an issue.

In seeking a mistrial, LM's counsel claimed that "the Court put me in a bind when it prohibited me from reading Mr. Low's deposition except in rebuttal of the defense's case." Day 2 Tr. 9:51:27-37. The reality is that LM bound itself by violating the Court's instructions.

**B. LM Caused The Mistrial By Repeatedly Disregarding The Rules of Evidence and the Court's Instructions**

LM elides its prior misconduct, which elicited negative rulings by the Court. But the record is littered with violations of basic rules of trial practice and evidence, including examples discussed below. A handful of such instances could easily be attributed to inadvertence. But here the violations were repeated—many occurring after admonishment—and were committed by a seasoned attorney in practice for approximately 40 years. It is fair to infer that the misconduct was willful, perhaps with mistrial being the goal.

**1. LM Unsuccessfully Tried To Backdoor Expert Testimony Into The Case Through Lay Witnesses**

LM encountered early difficulty with its first in-court witness, Johnny Wizman, by improperly trying to elicit opinions from a fact witness.

With narrow exception, opinions are the province of expert witnesses. Fed. R. Evid. 701-702. LM designated no expert witnesses under Rule 26(a)(2). At the close of discovery, however, LM tried to backdoor expert testimony through lay experts, two of its accountants, but

---

[3] LM implicitly concedes its faults in this regard by now agreeing to engage in the type of pretrial submissions for advance rulings that, in advance of the original trial, it willfully refused to do. S*ee* Resp. at 5 n. 2.

[4] The "demeanor" point is reiterated in LM's Response. *See* Resp. at 5, n.1.

the witness disclosure was late and the Court barred their testimony. *See* Solomon Decl. Ex. B at 1-2. At trial, LM repeated this failed gambit.

In making an argument to overcome objectionable opinion testimony proffered by Mr. Johnny Wizman, LM argued that the witness "will qualify as an expert in the watch-making industry." Day 2 Tr. 9:22:40-45. But LM never disclosed Mr. Wizman as a "lay expert," as required by Rule 26(a)(2)(C) and (D). After lengthy dialog and much delay, the Court sustained Bedat's objection to using Mr. Wizman as a lay expert, and precluded LM from testifying as an expert. *Id.* at 10:23:10-41.

**2. LM Repeatedly Refused To Lay A Proper Foundation For Testimony**

It is basic knowledge of any trial attorney that a percipient witness must first lay a foundation establishing personal knowledge before testifying. *See* Fed. R. Evid. 602. For a conversation, the formula is simple: the witness must explain "when" the conversation took place, "where," "who was present," and "what was said." 2 Fred Lane, *Goldstein Trial Technique* § 11:90 (2011).

In the face of this basic requirement, LM repeatedly sought to introduce testimony about conversations or meetings without first establishing a foundation. As a result, the Court repeatedly sustained objections, struck testimony, and instructed counsel. There was a simple solution for avoiding this reaction from the Court: stop violating Rule 602. Counsel, however, persisted as memorialized in the transcript.

1. At 10:34:57, LM tried to elicit testimony from Mr. Wizman about discussions about entering into contracts between you [LM] and Bedat, but when instructed to lay a foundation ("when, where and who said what"), Wizman admitted that he "did not have a discussion . . . at that meeting." Day 2 Tr. 10:35:26-29.
2. At 10:36:51, LM again asked for testimony about "discussions," without first establishing "time, place, and who was present." When it again failed to comply with the Rule, the

Court elicited helpful foundational and substantive testimony. Day 2 Tr. 10:37:04-10:40:26.

3. At 10:40:41, the following dialog began:

Q. [by LM's counsel]: **What did Mr. Low tell you?**

Solomon: **Objection**

Court: **Sustained**

Q. **What did he tell you, if anything about what your role was to be at Bedat**?

Solomon: **Objection**

Court: **Sustained.** ***There is no predicate at this point.***

Q. **Did you have discussions with Mr. Low with regard to what he wanted you to do regarding Bedat watch sales in the United States**?

Solomon: **Objection**.

Court: **Sustained. The jury will disregard this until counsel establishes when and where the conversation took place and who was present**.

Day 2 Tr. 10:40:41-10:41:12 (emphasis added).

4. Fifteen minutes later, LM's counsel again ignored the Court's instructions:

Q [by LM's counsel]. **Did you have your marketing approved by Bedat**?

A. **I did have my marketing approved by Bedat for the first one or two placements of advertisements. After that, Bedat and Frank Low said just do whatever you want. It's your market. You understand how to advertise and promote in that market, and we trust the partner**.

Court: **I have to disregard that unless he tells us *when, where, and how he had the conversation***.

Day 2 Tr. 10:55:52-10:56:17 (emphasis added).

**3. LM's Counsel Caused Adverse Rulings By Trying To Obtain Lay Witness Testimony To Interpret Legal Requirements Under The Contract**

It is fundamental that a witness appears at trial to testify about facts, not the law. *See Torres v. Cnty of Oakland*, 758 F.2d 147, 150-51 (6th Cir. 1985). The judge instructs on the law, including the legal interpretation of a contract at issue. *See* 7 *Wigmore on Evidence* § 1952 (Chadbourn rev. 1978); *Huff v. U.S.*, 273 F.2d 56, 61 (5th Cir. 1959).

Violating this fundamental division of responsibility, LM asked its witness over and again to testify about what Bedat was "supposed to do" under the agreement. *See, e.g.,* Day 2 Tr.: 11:40:53-41:25; 11:42:21-42:58. These improper questions drew objections, which the Court sustained.

**C. LM Misrepresents The Trial Record In Its Brief**

Certain statements about the Record in LM's Response are inaccurate and must be corrected.

*First*, at no point did Bedat "acknowledge[] that a mistrial was warranted" or "agree[] that 'the jury had been prejudiced.'" Resp. ¶ 3. Rather, Bedat merely explained that it would accept the judge's ruling if he found prejudice, and offered the alternative of a bench trial to cure any such finding so that the trial could continue. Day 2 Tr. 128:18-129:19. LM wanted nothing short of a mistrial, so a bench trial was flatly refused.

*Second*, LM contends that Bedat's motion for a default judgment was denied by the Court. Resp. ¶ 3. Not true. Bedat mentioned its intention to file a motion for default judgment, prompting the judge to describe a *hypothetical* response from LM that would require him to deny the motion should that situation arise. Day 2 Tr. 148:9-17. Indeed, Bedat's right to move for a default judgment is expressly reserved in the Court's Order. Solomon Decl. Ex. N.

*Finally*, LM claims that Bedat is trying to obtain sanctions for a pretrial conference two months before the trial. Resp. ¶¶ 1, 12. However, as Exhibit A to the Solomon Declaration shows, the conference to which Bedat refers was really the calendar call on May 30, 2013, which took place *two business days* (not two months) before the start of trial. Despite LM's protests, this time was "lost" because the entire trial, including the calendar call, will have to be repeated. Therefore, it is entirely appropriate that Bedat receive its counsel's fees for attending not only the trial, but also the calendar call.

**D. The Requested Sanctions Are Appropriate Under Eleventh Circuit Precedent**

LM discusses *Betty K Agencie, Ltd. v. M/V Monada*, 432 F.3d 1333 (11th Cir. 2005), at length, arguing that Bedat failed to meets its standard for dismissal. But *Betty K* is factually incomparable. There, the plaintiff made an "inadvertent, isolated" error in failing to answer to counterclaim. The Eleventh Circuit found that the District Court abused its discretion in dismissing the entire action with prejudice as a sanction. Here, defendant willfully derailed a jury trial in order to gain a "do over." The mistrial did not occur spontaneously. Rather, for two days, counsel and client made a considerable effort to undercut the case, with the client delivering the *coup de grace*, by firing its attorney.

The Eleventh Circuit authorizes a sanction of dismissal with prejudice if two conditions are met:

> (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and
>
> (2) the district court specifically finds that lesser sanctions would not suffice.

*Betty K*, 432 F.3d at 1338.

Both prerequisites are met here. First, LM's pattern of misconduct is demonstrated by the transcript: two days of delays, objectionable questions, interminable and unprepared video transcript, and improper questioning. The Court tried to encouraged LM to bring its conduct within acceptable bounds, but to no effect. Even if LM's trial conduct was just negligent (a point not conceded), LM acted willfully when it fired its counsel mid-trial to secure the mistrial and continuance. Second, a lesser sanction would not suffice. Bedat was entitled to a jury verdict by that jury based on the record as it then stood. A new trial gives LM a chance to get better prepared, to learn from its mistakes, and to try out its theories on a new jury and new judge. Not only would a "do over" be unfair to Bedat, but also it creates a dangerous precedent for the civil jury system.

LM claims that "at no time was [it] . . . warned that by having its counsel withdraw, it would be running the risk of having its case dismissed with prejudice." Resp. ¶ 10. That is false.

Bedat clearly stated that, by firing counsel, LM becomes an unrepresented entity and is "in default" and should have its claims dismissed. Day 2 Tr. P. 148:12. The Court then expanded upon the point, *id*. at 18-23, and Bedat urged LM to "keep Mr. Spatzer" to avoid default. Day 2 Tr. P. 148:24-25. The Court then authorized Bedat to bring a "sanctions motion." Day 2 Tr. P. 151:18-152:5. At any time, LM could have backtracked and agreed to resume the trial, but it did not. Moreover, a person is presumed to know the law, which includes the basic requirement that an entity must be represented by counsel.

In its brief, LM claims (in an underlined sentence) that Bedat's counsel gave its "full acknowledgment" that the only sanction available would be "financial." Resp. ¶ 10. This is also untrue. Bedat argued vigorously that LM, by firing its lawyer, was in default and should have a judgment rendered against it accordingly. The Court made this clear: "We are not opening up on motion practice *except on a default matter.*" Day 2 Tr. 159:7-8 (emphasis added).

Before LM fired its lawyer, the Court had not granted a mistrial. Even if it was leaning toward granting that relief (due to LM's trial conduct), the Court made clear that the re-trial would commence the very next day. LM did not want that. Instead, it wanted a new lawyer and more time to prepare, so it forced the issue by firing its counsel mid-trial leaving itself unrepresented and thus unable to proceed. That decision, by LM, was nothing less than a willful default for the purpose of obtaining procedural advantage and delay—exactly the ingredients prescribed by the Eleventh Circuit to justify imposing the harsh sanction of dismissal with prejudice. *See Betty K*; *see also Zocaras v. Castro,* 465 F.3d 479, 484-85 (11th Cir. 2006) (affirming dismissal sanction due to party's gamesmanship with respect to identity); *Calloway v. Perdue Farms, Inc.*, 313 F. App'x. 246, 249-50 (11th Cir. 2009) (counsel's failure to take advantage of multiple chances to bring conduct in conformity with rules justified dismissal sanction); *Gratton v. Great Am. Commc'ns,* 178 F.3d 1373 (11th Cir. 1999) (per curiam) (sanction upheld notwithstanding claim of "inadequate representation by counsel" because client shared culpability).

## CONCLUSION

The power to impose sanctions is within the discretion of the Court. Here, the Court should exercise that discretion and dismiss LM's counterclaims and grant Bedat judgment on its breach of contract claim (which is undisputed). The Court should also award Bedat its fees. LM claims that three attorneys are too many and that $610 for lead counsel is too high. Bedat disagrees but leaves that determination to the sound discretion of the Court. LM, for its part, does not even suggest what a law firm partner practicing for eighteen years should charge. Nor does LM provide any explanation for why three attorneys are too many.[5]

For the foregoing reasons, the Court should 1) dismiss LM's counterclaim against Bedat; and 2) order a compensatory sanction requiring LM to pay Bedat's attorneys' fees and costs for the two days of trial and the calendar call.

Dated: August 22, 2013

Respectfully submitted by:

/s/ *Andrew T. Solomon*

Andrew T. Solomon (*pro hac vice*)
Karen E. Abravanel (*pro hac vice*)
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Fax: (212) 660-3001
Email: asolomon@sandw.com
kabravanel@sandw.com

-and-

[5] Indeed, Bedat staffing included senior trial counsel (Mr. Solomon), a staff attorney (at a rate of $160/hour), and its local counsel. LM staffed the trial with its lead counsel, a technician, and a former attorney/"Law Clerk."

/s/ *Jason Patrick Kairalla*

Richard J. Ovelmen (Fla. Bar No. 28904)
Jason Patrick Kairalla (Fla. Bar No. 594601)
JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida 33131-2803
Direct: (305) 347-6805
Fax: (305) 372-9928
Email: rjo@jordenusa.com
jpk@jordenusa.com

*Attorneys for Plaintiff Bedat & Co Geneve*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system on August 22, 2013, which will send notice of electronic filing to: Scott Jay Feder, Esq., SCOTT JAY FEDER, P.A., 4649 Ponce De Leon Blvd. Suite 402, Coral Gables, FL 33146.

/s/ *Jason Patrick Kairalla*