UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21984-CIV-MOORE/MCALILEY

BEDAT & CO GENEVE,

        Plaintiff/Counter-Defendant,

v.

LUXURY MONTRES, LLC,

        Defendant/Counter-Plaintiff.

_____/

**REPORT AND RECOMMENDATION
ON PLAINTIFF'S MOTION FOR SANCTIONS**

Pending before the Court is Plaintiff/Counter-Defendant Bedat & Co. Geneve's

Motion for Sanctions Including Dismissal of Counterclaim and Award of Attorneys' Fees

Against Defendant/Counter-Plaintiff Luxury Montres, LLC. [DE 63]. This motion was

referred to the undersigned by the Honorable James Lawrence King and is fully briefed. [DE

65, 66, 72, 76]. For the reasons set forth below, I recommend that the motion be denied.

**I.    Background**

Bedat brought this action against Luxury Montres (LM) for breach of an exclusive

distribution agreement. LM counterclaims for breach of contract, misrepresentation and

wrongful termination of the distribution agreement against Bedat. The parties have agreed

that LM owes Bedat a stipulated amount on Bedat's claim, leaving only LM's counterclaim

for resolution by this Court. [DE 44, pp. 1-2]. On June 3, 2013, the parties began a jury trial

on LM's counterclaim, and the following day the Court granted a mistrial. The reasons for the mistrial, and the events that led up to that decision, are the subject of sharp disagreement between the parties. From the record before this Court, the following is clear.[1]

On the second day of trial, the parties and the Court engaged in an extended discussion regarding the possibility of a mistrial based on counsel for LM's belief that the Court had prejudicially undermined his credibility before the jury by taking over the questioning of his witness during direct examination.[2]

The Court admitted frustration with perceived deficiencies in LM's counsel's performance from the start of the trial and acknowledged that counsel for LM's concerns regarding the jury's perception of his competence were understandable given the Court's numerous interjections during the presentation of evidence.[3] [DE 60, pp. 115, 125, 143]. Notably, during the discussion, Bedat's counsel said he did not think counsel for LM was deliberately disregarding the Court's instructions in an effort to cause a mistrial. [*Id.* at p. 117].

The Court then gave counsel for LM the opportunity to discuss with his client the options of either declaring a mistrial and picking a new jury the next day, or discharging the

_____

[1] Evidently, only the second day of the trial has been transcribed [DE 60], and Bedat filed only selected portions with the Court, having failed to include many relevant portions. [DE 66]. The Court has reviewed the entire transcript.

[2] Making the point, LM's counsel said: "I will tell you, sitting there in the chair and having you talk to the witness for ten minutes, and me just sitting there, if the jury thinks I got my law license at Target, I wouldn't blame him." [DE 60. p. 125].

[3] The Court also expressed concern that the same issues regarding improper questioning would arise during Bedat's cross-examination. [DE 60, p. 114].

jury and proceeding with a bench trial. [DE 60, pp. 131-4]. After discussing the matter with

his client, LM counsel informed that Court that:

> Your Honor, I have had a talk with [my clients]. The bottom line is they have lost confidence in me because they don't think I am prepared to present this case to a jury based, in large part, on what they perceive is the way you had taken over the questioning, your attitude toward me, and they don't feel I can properly continue to represent them because of what you did. Period.

[DE 60, p. 135]. LM's counsel then asked for permission to withdraw. [*Id.* at 136]. Over

Bedat's objections,[4] the trial court granted a mistrial. [*Id.* at p. 158-60].

> The Court explained:

> I think it is prudent for us so we eliminate any possibility that the Court, well-intentioned although it may have been, to inject myself into eliciting evidence in the case for the record, which I thought was competent relevant evidence, and which would be necessary for the jury to hear, the Court may, or could be, perceived to have gone too far.

[DE 60, p. 141]. The Court also declined to fault counsel for LM, stating that ". . . I have

already taken responsibility for not having had a more thorough pre-trial conference. If had,

I could have eliminated all of this." [*Id.* at pp. 157-8].

The trial court gave LM 14 days to retain new counsel [DE 61], and new counsel

made a timely appearance on July 3, 2013. [DE 62]. The trial court thereafter recused and

the case has now been reset for trial before a different judge on November 18, 2013. [DE

74, 75].

---

[4] Bedat argued that LM believed it was doing poorly in the trial and that it dismissed its counsel in an improper effort to get a "do over." [DE 60, p. 137]. It also contended that by dismissing its counsel LM – a now unrepresented corporate entity, which could not represent itself – was in default. [*Id.* at pp. 147-150]. The trial court declined to address Bedat's request that the Court dismiss LM's counterclaim, or otherwise sanction LM, at that time. [*Id.* at p. 151].

## II.    Analysis

Bedat asks the Court to dismiss the counterclaim with prejudice pursuant to Federal Rule of Civil Procedure 41(b) and this Court's inherent authority, arguing that LM's dismissal of its counsel at trial caused the mistrial. Bedat asserts that "LM's decision to fire its counsel constitutes a failure to prosecute just the same as if it was not ready to present its case on the trial date and refused to proceed." [DE 63, p. 10]. Bedat also seeks monetary sanctions; specifically that LM compensate Bedat for the cost of its attorneys fees incurred at the final pre-trial conference and during the two days of trial. [DE 63, pp. 12-3].

### A.    Bedat is not entitled to dismissal of LM's counterclaim with prejudice

The Eleventh Circuit has held that a dismissal with prejudice, whether pursuant to a motion under Rule 41(b) or under the Court's inherent authority, "is an extreme sanction that may be properly imposed *only* when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct); and (2) the district court specifically finds that lesser sanctions would not suffice." *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337-8 (11th Cir. 2005) (citations omitted). Bedat has wholly failed to establish the first element, and therefore I do not address the second element.

Bedat does not come close to establishing a "clear pattern of delay" by LM. At most, Bedat argues that LM's counsel was ineffective in his presentation of his first witness via deposition and had difficulty conducting the direct examination of his second witness, which led to the mistrial and LM's dismissal of its counsel. [DE 63, pp. 6-8]. The record contains no indication of a pattern of willful delay or ignorance of court orders by LM. Indeed, as

4

already noted, at trial Bedat's counsel said he did not believe LM's attorney was deliberately disregarding the Court's direction about his presentation of evidence so as to cause a mistrial. [DE 60, p. 117].

In the cases relied on by Bedat, the courts have dismissed claims with prejudice where there is an extended pattern of delay, failure to comply with court orders and deliberate actions to impede the case. For example, in *City of New York v. Adventure Outdoors, Inc.* 644 F.Supp.2d 201, 210 (E.D.N.Y 2009), *reversed on other grounds sub nom City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114 (2nd Cir. 2011), a case which Bedat inaccurately describes as mirroring the default here, the defendant appeared at the first day of trial and informed the court that it was choosing not to defend the action at trial. *See also Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962) (affirming dismissal where party engaged in pattern of delay over a six year period); *Boyett v. Lykes Bros. S.S.*, 995 F.2d 223 (5th Cir. 1993) (mistrial declared following a pattern of bad faith conduct that resulted in needless delay); *Hazeur v. Keller Indus.*, 983 F.2d 1061 (5th Cir. 1993) (affirming district court's sanction of attorneys who had deliberately, and in bad faith, caused a mistrial).

This case is significantly different from those cited by Bedat. It is true that once the Court permitted LM's counsel to withdraw, the Court had to declare a mistrial.[5] However, the Court permitted LM's counsel to withdraw and declared a mistrial, acknowledging that its actions may have prejudiced the jury against LM's counsel. Further, it is clear that the

---

[5] Bedat's suggestion that LM could have hired new counsel who could step into the case the following day, and complete the trial [DE 63, p. 9], is unrealistic and disingenuous.

5

Court seriously considered declaring a mistrial *before* LM's counsel asked to withdraw. And, when Bedat asked the Court to sanction LM at that time, it declined. On this record, Bedat's claim that LM effectively abandoned its case when it fired its counsel mid-trial, ignores the greater context in which these events took place.

LM secured new counsel within the time period provided and is ready to proceed to trial. The record does not establish that LM improperly sought to delay the action nor is there any evidence that LM contemptuously disregarded court orders. Rather, the record shows that LM's counsel had difficulty conducting his direct examination, which led to his termination and prompt replacement with new counsel.

In sum, after careful review of the record, including the transcript of the second day of the trial, I find that Bedat has not shown that LM engaged in a clear pattern of delay or willful contempt, and recommend that Bedat's motion to dismiss LM's counterclaim with prejudice be denied.

**B.     Bedat is not entitled to its attorneys' fees**

Bedat also seeks to recover the attorneys' fees it incurred for the final pretrial conference and two days of trial, pursuant to the Court's inherent authority to award attorneys' fees as a sanction. [DE 63, p. 12]. Bedat, understandably, is frustrated that the mistrial and need to recommence trial will increase its attorneys' fees and delay its arrival at judgment. This record, however, does not support the Court's use of its inherent authority to impose those costs on LM, as a sanction.

District courts possess the inherent power to regulate litigation and to sanction

6

litigants and their counsel for abusive practices. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 126 (S.D. Fla. 1987)(citations omitted). These powers "are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (citation and internal quotation marks omitted). The district court should be cautious in exercising its inherent authority. *Allapattah Services, Inc. v. Exxon Corp.*, 372 F.Supp.2d 1344, 1373 (S.D. Fla. 2005).

In this Circuit, the "key to unlocking a court's inherent power is a finding of bad faith," and the Court may assess attorneys' fees and costs as a sanction when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001), *abrogated on other grounds*, *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008) (citation and internal quotation marks omitted). The standard for finding bad faith is high:

> Bad faith exists when the court finds that a fraud has been practiced upon it, or that the very temple of justice has been defiled, or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order. A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. In assessing whether an award is proper under the bad faith standard, the inquiry will focus primarily on the conduct and motive of a party, rather than on the validity of the case.

*Allapattah Servs, Inc.*, 372 F. Supp. 2d at 1373 (citations and internal quotation marks omitted). For the reasons discussed above, I find that Bedat has not established that LM acted in bad faith, and thus recommend that the Court deny its request for attorneys' fees as

a sanction.[6]

## III.  Recommendation

Based on the foregoing, I RESPECTFULLY RECOMMEND that

Plaintiff/Counter-Defendant Bedat & Co. Geneve's Motion for Sanctions Including

Dismissal of Counterclaim and Award of Attorneys' Fees Against Defendant/Counter-

Plaintiff Luxury Motres, LLC [DE 63], be **DENIED**.

## IV.  Objections

The parties may file written objections to this Report and Recommendation with the

Honorable K. Michael Moore within **ten days** of the date of this Report and

Recommendation.  Failure to timely file objections shall bar the parties from attacking on

appeal any factual findings contained herein. *RTC v. Hallmark Builders, Inc.*, 996 F.2d 1144,

1149 (11th Cir. 1993); *LoConte v. Dugger,* 847 F.2d 745, 749-50 (11th Cir. 1988).

RESPECTFULLY RECOMMENDED in chambers in Miami, Florida this 21st day of

October, 2013.

CHRIS McALILEY
UNITED STATES MAGISTRATE JUDGE

---

[6] Because Bedat is not entitled to recover fees, I do not resolve the issue of the reasonableness of the fees sought. I note, however, that the hourly rates sought by Mr. Solomon and Mr. Kairalla, $610 and $435 respectively, may be excessive for this jurisdiction. Moreover, it is not clear that it was reasonable and necessary for Bedat to employ two partners and an associate at the pretrial conference and trial. [*See* DE 63-1].

cc:
The Honorable K. Michael Moore
Counsel of record