UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-21984-CIV-KING/MCALILEY

BEDAT & CO GENEVE,

        Plaintiff/Counter-Defendant,

v.

LUXURY MONTRES, LLC,

        Defendant/Counter-Plaintiff.

_____/

**PLAINTIFF/COUNTER-DEFENDANT BEDAT & CO GENEVE'S REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL**

| | |
|---|---|
| CARLTON FIELDS JORDEN BURT LLP | SULLIVAN & WORCESTER LLP |
| Richard J. Ovelmen | Andrew T. Solomon |
| Jason Kairalla | Karen E. Abravanel |
| 100 S.E. 2nd Street | 1633 Broadway, 32nd Floor |
| Miami Tower, Suite 4200 | New York, New York 10019 |
| Miami, Florida 33131-2113 | Phone: (212) 660-3000 |
| Phone: (305) 530-0050 | Fax: (212) 660-3001 |
| Fax: (305) 530-0055 | Email: asolomon@sandw.com |
| Email: jkairalla@cfjblaw.com | |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ............................................................................................................................ 2

    I.      The Jury Did Not Have Legally Sufficient Evidence To Find Modification Or Waiver ................................................................................................................... 2

    II.     LM Admits That It Had To Show Gross Negligence Or Willful Misconduct To Recover Damages, But Points To No Evidence That Meets This Heightened Standard ................................................................................... 5

    III.    LM Cannot Point To Evidence Supporting Its Lost Profits Claim; Nor Did The Jury Have Any Ability To Calculate Lost Profits With Reasonable Certainty ............................................................................................................... 6

    IV.    LM Does Not And Cannot Rebut Bedat's Estoppel Claim Based On The Length Of Its Delay In Formally Asserting Its Claim Of Breach; The Prejudice Lies In the Numerous Transactions In Which Bedat Engaged After The Initial Breach ..................................................................................... 9

CONCLUSION ........................................................................................................................ 10

# TABLE OF AUTHORITIES

**Cases**

*Air Caledonie Int'l v. AAR Parts Trading, Inc.*,
   315 F. Supp. 2d 1319 (S.D. Fla. 2004)............................................................................6, 7, 9

*Allapattah Servs., Inc. v. Exxon Corp.*,
   333 F.3d 1248 (11th Cir. 2003)...................................................................................................3

*Bowdoin v. Showell Growers, Inc.*,
   817 F.2d 1543 (11th Cir. 1987)...................................................................................................4

*Clayton v. Howard Johnson Franchise Sys, Inc.*,
   954 F.2d 645 (11th Cir. 1992) ....................................................................................................9

*Davis Double Seal Jalousies, Inc. v. Huckleberry*,
   134 So.2d 31 (Fla. 3rd Dist. Ct. App. 1961).................................................................................4

*F.M.W. Properties, Inc. v. Peoples First Fin. Sav. and Loan Ass'n*,
   606 So.2d 372 (Fla. 1st Dist. Ct. App. 1992) ...............................................................................4

*George Hunt, Inc. v. Dorsey Young Constr., Inc.*,
   385 So.2d 732 (Fla. 4th Dist. Ct. App. 1980).........................................................................6, 7

*Marriott Corp. v. Dasta Const. Co.*,
   26 F.3d 1057 (11th Cir. 1994) ....................................................................................................4

*McCollum Aviation, Inc. v. CIM Assoc., Inc.*,
   446 F. Supp. 511 (S.D. Fla. 1978) ..............................................................................................2

*Peat, Inc. v. Vanguard Research Inc.*,
   378 F.3d 1154 (11th Cir. 2004)...................................................................................................7

*Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*,
   145 F. Supp. 2d 1348 (S.D. Fla. 2001).......................................................................................3

*Step-Saver Data Sys., Inc. v. Wyse Tech.*,
   939 F.2d 91 (3d Cir. 1991) .........................................................................................................3

*U.S. for Use of Fram Corp. v. Crawford*,
   443 F.2d 611 (5th Cir. 1971) ......................................................................................................2

*United States v. Bray*,
   139 F.3d 1104 (6th Cir. 1998) ....................................................................................................7

*Wisconsin Knife Works v. Nat'l Metal Crafters*,
   781 F.2d 1280 (7th Cir. 1986) ....................................................................................................2

**Statutes**

UCC § 2-201..................................................................................................................................3

UCC § 2-208..................................................................................................................................4

UCC § 2-209..................................................................................................................................2

Plaintiff/Counter-Defendant Bedat & Co Geneve ("Bedat") submits this reply memorandum of law in response to the opposition memorandum of Defendant/Counter-Plaintiff Luxury Montres, LLC ("LM") and in further support of its motion for judgment as a matter of law under Fed. R. Civ. P. 50(b), or, in the alternative, a new trial under Fed. R. Civ. P. 59.[1]

## INTRODUCTION

First, LM does not contend that the evidence at trial established the elements of a breach of contract claim under the express terms of the Exclusive Distribution Agreement (the "Contract"). Instead, LM argues that the jury could have found that the key terms of the Contract were waived or modified by the parties' course of performance. But it is plain that the jury did not have legally sufficient evidence to find "modification" or "waiver." LM fails to show a "course of performance" modifying or waiving the Contract, as it cannot point to a single act of performance that substantiates the "course of performance" that LM claims existed.

Second, LM concedes that to collect damages it had to show "gross negligence" or "willful misconduct." Plainly, LM did not meet this burden. The fact that LM's principal, Johnny Wizman, saw a gold Bedat watch in a store in Asia falls far short of showing that Bedat committed "gross negligence" or "willful misconduct" when it did not ship 77 gold watches to LM in 2010. But even if Mr. Wizman's sighting were probative of something, LM's gold watch order comprised only a fraction of LM's claimed cancelled orders. LM can point to no other evidence of Bedat doing anything allegedly improper with respect to any other cancelled order.

---

[1] As used herein, "Bedat Mem. __" refers to Bedat's opening memorandum of law in support of the motion, filed at Dkt. 100, and "LM Opp. Mem. __" refers to LM's opposition memorandum, filed at Dkt. 103. "Dkt. __" refers to documents entered the docket. "PX __" and "DX __" refer, respectively, to Plaintiff's and Defendant's exhibits admitted at trial, filed with the Court as exhibits to Plaintiff/Counter-Defendant's Notice of Filing Trial Exhibits, entered at Dkt. 105. "Day 1 Tr." refers to the transcript of the jury trial proceedings on November 20, 2013 (Testimony of Steven Wizman), entered at Dkt. 97. "Day 2 Tr." refers to the transcript of the jury trial proceedings on November 21, 2013, entered at Dkt 104. "Day 3 Tr." refers to the transcript of the jury trial proceedings on November 22, 2013, entered at Dkt. 98.

Third, LM does not dispute that it provided the jury with no method of or basis for calculating the correct damages. It submitted a hypothetical best case scenario, which was clearly impossible. The jury's ultimate reduction of LM's claimed damages by an unexplained percentage (roughly 40% of LM's demand) only proves that the jury was forced to guess without guidance.

## ARGUMENT

### I. The Jury Did Not Have Legally Sufficient Evidence To Find Modification Or Waiver

In its opening memorandum, Bedat argued that LM did not submit sufficient evidence to prove breach of contract because it failed to show that Bedat had *accepted* the orders comprising the Cancelled Customer Orders[2] as required under the Contract. (Bedat Mem. pp. 7-11). In response, LM claims that Bedat either waived this requirement or that the parties modified the contract through "a course or method of dealing . . . different from the strict interpretation of the contract." (LM Opp. Mem. p. 4). In support of this argument, LM cites UCC § 2-209.[3]

An express modification, however, is not possible under UCC § 2-209 (Fla. Stat. 672.209)[4] because the statute provides that "the requirements of the statute of frauds . . . must be satisfied." UCC § 2-209(3); *see also McCollum Aviation, Inc. v. CIM Assoc., Inc.,* 446 F. Supp. 511, 513-15 (S.D. Fla. 1978). The application of the statute of frauds means that "'[m]odification' for the future cannot therefore be conjured up by oral testimony if the price involved is $500.00 or more . . . ." UCC § 2-209 cmt. 3. Additionally, the Contract requires all

---

[2] Defined terms have the same meaning as indicated in Bedat's opening memorandum of law.

[3] The jury was not instructed by the Court on either theory, and rightly so based on the lack of evidence. But if LM had wanted the jury to consider waiver or modification, LM should have requested (and Bedat would have objected to) a jury instruction on this point. *Wisconsin Knife Works v. Nat'l Metal Crafters*, 781 F.2d 1280 (7th Cir. 1986) (Posner, C.J.) (reversing and remanding district court's decision for possible new trial, where jury instruction under UCC § 2-209 was insufficient to explain law of waiver or modification); *U.S. for Use of Fram Corp. v. Crawford*, 443 F.2d 611, 614-15 (5th Cir. 1971).

[4] All citations herein to Fla. Stat. § 671.101 *et seq.* are to the corresponding sections of the UCC.

2

communications concerning the Contract to be in writing. No such writing exists and LM does not dispute that the UCC's statute of frauds applies. *See* UCC § 2-201.

As a theoretical matter, a "course of performance," if established, can also result in a contract modification. *See Allapattah Servs., Inc. v. Exxon Corp.*, 333 F.3d 1248, 1261 (11th Cir. 2003). But not so here. LM failed to show any "course of performance" that dispenses with the Contract's fundamental requirement that communications and the ordering process be conducted in writing. In fact, LM cannot point to a single transaction that Bedat actually consummated with LM that was not *accepted* by Bedat either in a pro forma invoice ("PFI", *e.g.*, PX 3, 4, 15; *see also* PX 18 (final invoice referencing a "PB" pro forma invoice), PX 30 (same), PX 132 (same) and PX 200)) or email indicating specific items that would be shipped on payment by LM (*e.g.*, PX 72).

LM tries in vain to establish a modification or waiver through course of performance based on Johnny Wizman's uncorroborated, conclusory testimony that Bedat had "verbally" accepted orders and that Bedat "never followed this 'contractual' paperwork system." (LM Opp. Mem. p. 4). That testimony is contradicted by the documentary evidence, as cited above, and the Court should, *at a minimum*, grant a new trial because the jury's verdict was contrary to the great weight of evidence. But, indeed, judgment as a matter of law is warranted because LM's proof, even if accepted, is fatally insufficient as a matter of law. A "course of performance" is not established by mere words of assurance, but requires actions. *Step-Saver Data Sys., Inc. v. Wyse Tech.,* 939 F.2d 91, 103-04 (3d Cir. 1991) (Wisdom, J., siting by designation); *see also Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1356 (S.D. Fla. 2001). LM's witnesses did not say, and LM did not show, that Bedat actually shipped goods without confirming the sale with a written acceptance, as required under the Contract (PX 1 at § 4.1, 7.1,

3

14.1; Day 2 Tr. 39:25-40:10).  It might be a different case if Bedat had repeatedly shipped goods based on oral acceptances.  But here, the evidence—viewed in the light most favorable to LM—shows that Bedat may have uttered words of "acceptance," but never acted on those words without also a writing.  In other words, LM did not show that Bedat engaged in a "course of performance" that was inconsistent with the Contract, which is necessary to find a modification. *See* UCC § 2-208(2) (requiring court to construe express terms and course of performance consistently "whenever reasonable").

      Nor can LM cover its defects in proof with attorney rhetoric.  LM makes sweeping statements about the "real world" and trumpets an email from Frank Low, which assures LM that "the initial order placed by LM at the end of March of 2010, would be filled.  (LM Opp. p. 4). As a matter of law, this *single* email (far from a *course* of performance) does not establish a modification of the contract or waiver.  *See, e.g., Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1547 n. 18 (11th Cir. 1987) (one earlier transaction is insufficient to create course of conduct ).  By definition, a "course of performance" requires "repeated occasions for performance."  *See* UCC § 2-208 cmt. 4 ("a single occasion of conduct does not fall within the language of this section . . . .").  Moreover, Mr. Low's statement is nothing more than a generalized assurance about future performance; it is legally insufficient to create a modification. *See Marriott Corp. v. Dasta Const. Co.*, 26 F.3d 1057, 1069 n. 22 (11th Cir. 1994) ("generalized assurances . . . were legally insufficient to create a binding agreement either by oral modification of a written contract or by estoppel"); *Davis Double Seal Jalousies, Inc. v. Huckleberry*, 134 So.2d 31 (Fla. 3rd Dist. Ct. App. 1961) (per curiam); *F.M.W. Properties, Inc. v. Peoples First Fin. Sav. and Loan Ass'n*, 606 So.2d 372 (Fla. 1st Dist. Ct. App. 1992).

In any event, even if Mr. Low's email were deemed an "acceptance" of the March 2010 order, that acceptance pertains to just that order. LM, however, never proved the components of that order, nor what LM specifically received or did not receive. More significant, LM showed no similar "acceptance" for subsequent orders, although its damage claim covered orders in 2010, 2011 and 2012. (DX 140).

LM admits that it did not prove its case under the express terms of the Contract, as written. It thus tries to defend the jury verdict on a contract that the parties never agreed to and that does not exist, not physically and not by virtue of alleged changes due to a purported "course of performance" that was not proven.

## II. LM Admits That It Had To Show Gross Negligence Or Willful Misconduct To Recover Damages, But Points To No Evidence That Meets This Heightened Standard

LM concedes that the Contract bars recovery of lost profits damages absent a showing of gross negligence or willful misconduct. (LM Opp. Mem. p. 8). LM then makes two arguments, both clearly insufficient, explaining how it purportedly met this heightened standard.

First, LM claims that it "provided evidence at trial that Bedat accepted orders *knowing* it would never be delivering product, *knowing* that it would never be able to deliver much of the product timely, and *knowing* that LM would be damaged thereby in its relations with retailers." (*Id.* (emphasis added)). LM provides no citation to the record for these emphatic claims. That is no surprise: none exists.

Second, the "gold watch" story carries no weight. LM claims to have "established by unrebutted evidence that Bedat promised to delivery high end, expensive luxury gold watches, breached these promises, then advised that the watches had been discontinued when in fact this representation was false." (*Id.*). LM contends that it knows that Bedat lied because Johnny Wizman "saw the 'discontinued' gold watches for sale in the Orient, a territory which Bedat sold

5

directly thus making substantially more profit than if it had delivered the watches to LM." (*Id.*). In making these bold statements, LM provides no citation other than "J. Wizman Day 1 Tr.". Indeed, the record contains no evidence of Bedat's profitability selling "in the Orient." Moreover, J. Wizman's testimony proves nothing.

J. Wizman testified that Mr. Low told him in January 2011 that Bedat did not produce the gold watches that LM had ordered in 2010. (Day 2 Tr. 92:12-93:10). J. Wizman then testified that he believed this explanation to be untrue because "he actually saw the product within their [Bedat's] boutiques in Asia." (Day 2 Tr. 93:11-25). But J. Wizman did not and could not testify as to when this boutique received the product, when the products were manufactured by Bedat, or how the store obtained the gold watches. In short, J. Wizman's proof of Mr. Low's alleged lie is wholly speculative. J. Wizman's testimony also shows, at most, a false explanation by Bedat, but says nothing about Bedat's intentions when it allegedly accepted LM's order for the gold watches (if it accepted the order). Further, even if a jury could reasonably conclude from this evidence that Bedat committed "gross negligence" or "willful misconduct," such finding would apply only to the order for the "77 gold watches" (Day 2 Tr. 90:3-16), which is but a fraction of the orders comprising the Cancelled Customer Orders.

### III. LM Cannot Point To Evidence Supporting Its Lost Profits Claim; Nor Did The Jury Have Any Ability To Calculate Lost Profits With Reasonable Certainty

The standard of proof for lost profits damages is not contested. The rule is that "evidence as to the amount of damages cannot be based on speculation or conjecture, but must be proven with certainty." *George Hunt, Inc. v. Dorsey Young Constr., Inc.*, 385 So.2d 732, 732 (Fla. 4th Dist. Ct. App. 1980); *Air Caledonie Int'l v. AAR Parts Trading, Inc.*, 315 F. Supp. 2d 1319, 1340 (S.D. Fla. 2004). Even though the amount of damages is an issue of fact for the jury, the evidence must be "be legally sufficient to support the award of damages represented by the jury

6

verdict." *George Hunt*, 385 So. 2d at 733 (citing *Sunrise Point, Inc. v. Reliance Realty, Inc.*, 371 So.2d 674 (Fla. 3rd Dist. Ct. App. 1979); *Air Caledonie*, 315 F. Supp.2d at 1340-41. Bedat described this standard in its opening papers, citing to additional authorities. (Bedat Mem. p. 19). LM cites no contrary authority. (LM Opp. Mem. pp. 11-14).

In its moving papers, Bedat made the point that the jury did not have sufficient information to calculate damages, other than through pure guesswork, because LM never offered specific proof, on a product or order-by-order basis, showing the order, acceptance, non delivery, and proximate causation (was the loss due to Bedat's breach or LM's non-payment?). Nor did LM provide the jury with a method or basis for the jury to calculate returns and unsold consignments. (Bedat Mem. pp. 19-20).

In response, LM refers to "detailed evidence" about cancelled orders reflected in a document *that was never introduced into evidence at the trial.* (LM Opp. Mem. p. 11-12, citing Defendant's Exhibit 7C pre-marked as a trial exhibit but not introduced into evidence or even used during the trial). LM also refers to its "Summary of Damages," which LM mislabels in its brief as Defendant's Exhibit 8C, when it was, in fact, trial exhibit DX 140. Technical issues aside, plainly, this Summary exhibit does not provide evidence sufficient to establish the elements of LM's claim.

The "Summary" is nothing more than an utterly unrealistic and flawed "arithmetic computation."[5] It shows lost profits based on every cancelled order by LM's customers,

---

[5] The court took the Summary as an arithmetic calculation. (Day 1 Tr. 89:11-16). LM now contends that the Summary was admissible as evidence in chief (as opposed to as a demonstration) under Rule 1006 (LM Opp. Mem. p. 13). *See United States v. Bray*, 139 F.3d 1104, 1109-1112 (6th Cir. 1998) (distinguishing summaries as demonstratives and as evidence in chief). That is a dubious proposition given the requirements for laying a foundation for a summary under Rule 1006, including that the underlying materials on which it is based are clearly identified and admissible (even if not admitted). *See Peat, Inc. v. Vanguard Research Inc.*, 378 F.3d 1154, 1159-60 (11th Cir. 2004). But the point is academic. As explained above, even if the Summary were deemed as evidence in chief, it proves only the profit LM lost on *all* cancelled orders, regardless of the reason for the losses or the risk that certain sales would not result in actual sales proceeds.

7

regardless of the reason and without any offset for returns (which were substantial) and bad debts. Moreover, the Summary is not based on underlying evidence, which if submitted at trial, could establish each element of LM's prima facie case. The Summary contains no information about LM's order placement, Bedat's acceptance (or non-acceptance), LM's tender of payment, or causation (i.e., the reason for the late or non delivery). The data for the Summary comes from LM's customer orders that were never filled, not from LM product orders that Bedat allegedly did not deliver.

    The bottom line is this: the Summary is a hearsay document, prepared by someone not in the courtroom, based on completely impossible assumptions, including that 100 percent of the cancelled orders were cancelled as a proximate result of Bedat's gross negligence or intentional misconduct and that 100 percent of the cancelled orders would have been fully paid for by LM's customers. Neither assumption is correct or reasonable. The evidence at trial showed that many deliveries were cancelled because of LM's non-payment, not a breach by Bedat. (*See, e.g.,* PX 72 (J. Wizman acknowledging that LM's non payment would result in cancellation of its customer orders); PX 80). The summary ignores that inconvenient fact. The evidence at trial also showed that a substantial portion of LM's sales were returned by customers. (*See* Bedat Mem. p. 20). The summary ignores that inconvenient fact, as well. Finally, the evidence at trial showed that all or nearly all of Bedat's non-deliveries (assuming it ever accepted the orders) was due to a simple breach, not gross negligence or willful misconduct. The summary ignores that inconvenient fact, too.

    Under Florida Law, "a party seeking lost profits must prove that defendant's actions *caused* the loss and that the amount of loss can be established with *reasonable certainty.*" *Clayton v. Howard Johnson Franchise Sys, Inc.*, 954 F.2d 645, 652 (11th Cir. 1992) (emphasis

added). LM provided the jury with no means, other than pure guesswork, to ascertain the correct measure of damages. Instead, LM presented its own best-case scenario, which is known to be impossible or inaccurate. To be sure, LM did not have to establish its damages with absolute "precision," just "reasonable certainty," but LM did not even come close. *Id.* (granting new trial on damages where plaintiff failed to provide sufficient evidence to translate proof of "gross revenue" into "net revenue," where the latter was the correct measure of damages); *Air Caledonie*, 315 F. Supp.2d 1341 (rejecting damages calculation where causation was not shown and calculation was based on speculation).

LM points to the fact that it recovered only 60% of its demand as evidence that the jury considered Bedat's various arguments as to why LM was not entitled to a 100% recovery. (LM Opp. Mem. p. 14). But the jury's recognition that LM overplayed its claim does not mean that the jury had a rational basis to assign a discount or any particular discount. Indeed, neither party has even tried to "reverse engineer" the jury award in relation to LM's demand, and it appears to be nothing more than guesswork on a claim that invites mathematical precision. LM's damages are capable of objective calculation, in contrast to claims for "pain and suffering" or "loss of consortium," where subjectivity is expected and permitted.

**IV.     LM Does Not And Cannot Rebut Bedat's Estoppel Claim Based On The Length Of Its Delay In Formally Asserting Its Claim Of Breach; The Prejudice Lies In the Numerous Transactions In Which Bedat Engaged After The Initial Breach**

LM admits that the first alleged breach occurred in August 2010 and that it did not put Bedat on notice of the breach until May 2012. (LM Opp. p. 9). LM describes this interval as 15 months, although we count 20. (*Id.*). Either way, the point of the estoppel argument is not the number of months but the business dealings and transaction that took place during late 2010, all of 2011, and 2012. In good faith and as a matter of law, LM had an obligation to notify Bedat of the breach and to make an election to treat the breach as total or partial. What LM could not do

9

was secretly husband the alleged breaches, continue to take credit from Bedat and order more goods, and then break out the claim when Bedat finally demanded payment on the credit line.

LM argues that it was not required to provide notice of the breach because of Section 17 of the Contract, which provides that "Each party is required to continue to perform its obligations under the Agreement, pending final resolution of any dispute, controversy or claim concerning or relating to the Agreement."  (LM Opp. p. 10).  If anything, that provision bolsters Bedat's position by confirming that the parties contemplated that disputes during the course of performance would be raised and resolved, informally or through litigation, during the term of the agreement; not covertly harbored.

## CONCLUSION

For the foregoing reasons, the Court should grant Bedat's motion for judgment as a matter of law; or, in the alternative, because the verdict was against the weight of evidence, at a minimum, the Court should order a new trial.

Dated: January 21, 2014

Respectfully submitted by:

/s/     *Jason Patrick Kairalla*
Richard J. Ovelmen (Fla. Bar No. 28904)
Jason P. Kairalla (Fla. Bar No. 594601)
CARLTON FIELDS JORDEN BURT LLP
100 S.E. 2nd Street
Miami Tower, Suite 4200
Miami, Florida 33131-2113
Phone:  (305) 530-0050
Fax:  (305) 530-0055
Email: rovelmen@cfjblaw.com
       jkairalla@cfjblaw.com

-and-

Andrew T. Solomon (*pro hac vice*)
Karen E. Abravanel (*pro hac vice*)
SULLIVAN & WORCESTER LLP
1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Fax: (212) 660-3001
Email:  asolomon@sandw.com
        kabravanel@sandw.com

*Attorneys for Plaintiff/Counter-Defendant Bedat & Co Geneve*

11

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been electronically filed with the Clerk of Court using the CM/ECF system on January 21, 2014, which will send notice of electronic filing to: Scott Jay Feder, Esq., Scott Jay Feder, P.A., 4649 Ponce De Leon Blvd. Suite 402, Coral Gables, FL 33146.

/s/     *Jason Patrick Kairalla*